**Vincent DiBATTISTA et al.**

v.

**STATE of Rhode Island et al.**

**No. 2001–100–Appeal.**

Supreme Court of Rhode Island.

Nov. 8, 2002.

Christopher M. Rawson, Karen A. Pelczarski, Providence, for Plaintiff.

Jametta O. Alston, Aaron L. Weisman, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Relying primarily on claim-preclusion principles, the Superior Court granted summary judgment in favor of the defendants, the State of Rhode Island and various officials of the Department of Children, Youth and Families (DCYF). In doing so, it dismissed the claims of two former foster-care parents, the plaintiffs

Vincent and Robin DiBattista (plaintiffs or DiBattistas). Previously, they had challenged DCYF's revocation of their foster-care license, but the Family Court rejected their administrative appeal and dismissed their claims. Thereafter, the plaintiffs filed a second lawsuit against these same defendants in Superior Court. But that court also dismissed their claims—initially on the pleadings, *see DiBattista v. State of Rhode Island, Department of Children, Youth and Families,* 717 A.2d 640 (R.I. 1998) (mem.)—and then, on remand from this Court, by granting summary judgment in favor of the defendants. On both occasions, the court ruled that the doctrine of *res judicata* precluded the plaintiffs from pursuing claims that they raised or could have raised in the first lawsuit. The trial court also granted summary judgment and dismissed their other claims. They now appeal from that judgment. Because we agree that *res judicata* barred the plaintiffs from relitigating the propriety of DCYF's revocation of their foster-care license and because their other claims failed as a matter of law or lacked the requisite evidentiary support, we affirm and deny the appeal.

### Facts and Travel

In December 1994, the DiBattistas were DCYF-licensed foster parents, caring for four foster children placed within their home. After plaintiffs refused to reenroll their foster son in a DCYF-recommended program, they allegedly denied a visiting DCYF counselor access to their home. After this denial, a DCYF social worker visited plaintiffs. The social worker again strongly recommended that the DiBattistas enroll their foster son in a particular DCYF-recommended program. When plaintiffs again refused to do so, the social worker asked them to sign a request form to have the child transferred to another foster home. But plaintiffs demurred. Before leaving plaintiffs' home, however, the social worker met privately with two of the DiBattistas' foster children. The next day plaintiffs reported the social worker to DCYF counseling authorities, alleging emotional abuse committed against their foster daughter during the private meeting.[1] They also requested that DCYF assign a different social worker to their case. Simultaneously, DCYF called a meeting with plaintiffs to discuss their rejection of DCYF's recommendations and their alleged denial of home access to the DCYF program worker.

The plaintiffs attended the specially called meeting at the DCYF office on January 9, 1995. When confronted with the fact that DCYF was considering whether to revoke their foster-care license, plaintiffs became angry and orally abusive. The following day, DCYF notified the DiBattistas via telephone and in writing that it had revoked their foster-care license. That same afternoon, the police escorted all four of plaintiffs' foster-care children from school and DCYF placed them in new foster homes.

After DCYF revoked their foster-care license, plaintiffs received an administrative hearing, after which the hearing officer issued a written opinion upholding DCYF's decision to revoke the DiBattistas' foster-care license. Thereafter, plaintiffs appealed the decision to the Family Court under the Administrative Procedures Act (APA), G.L.1956 § 42–35–15, and in accordance with G.L.1956 § 8–10–3(e). After a hearing, but without the benefit of the actual record from the previous adminis-

---

**1.** Ultimately, plaintiffs filed a complaint against the social worker, alleging emotional abuse. Immediately following their meeting with DCYF officials, they also requested an investigation of these circumstances.

trative proceedings, the Family Court dismissed the administrative appeal. Instead of seeking appellate review of the Family Court's dismissal decree,[2] plaintiffs filed a separate *pro se* lawsuit in Superior Court, entitled "Complaint for Civil Rights Violations." There, they contended that DCYF revoked their foster-care license unlawfully and that, in so doing, various DCYF officials defamed them, breached the pertinent foster-care contract between plaintiffs and DCYF, and engaged in a variety of other alleged misconduct in connection with revoking their license. Ultimately, they asked the court to reinstate their foster-care license so that they could serve again as foster parents.

Initially, the Superior Court dismissed plaintiffs' complaint and granted judgment in favor of DCYF on the pleadings. On appeal to this Court, however, we reversed "in light of the patchy record and pleadings presented for [the court's] consideration." *DiBattista*, 717 A.2d at 642. We noted that the Superior Court record contained no evidence of any final Family Court decree or judgment, and observed that no transcripts or other documents appeared to embody that court's dismissal ruling. As a result, we remanded the case to the Superior Court for reconsideration of the dismissal, directing the court to treat DCYF's motion for judgment on the pleadings under Rule 12(c) of the Superior Court Rules of Civil Procedure as a motion for summary judgment, and to allow both sides to present all materials pertinent to the motions. *DiBattista*, 717 A.2d at 642–43.

On remand, the Superior Court did so, and, after issuing a written opinion granting defendants' summary judgment motion, it entered judgment in favor of the DCYF defendants. Once again the court ruled that the doctrine of *res judicata* barred plaintiffs' attempt to relitigate claims arising from the license revocation. The court also dismissed plaintiffs' remaining claims because they failed to show the existence of a disputed issue of material fact.

### Analysis

This Court reviews summary judgments *de novo*. *See M & B Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996)). While engaging in such a review, "we are bound by the same rules and standards employed by the trial justice." *Id.* (citing *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I. 1996)). Accordingly, we will affirm a summary judgment "if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998) (quoting *Rotelli*, 686 A.2d at 93).

### I

#### *Res Judicata*

The doctrine of *res judicata*, or claim preclusion, "renders a prior judgment by a court of competent jurisdiction in a civil action between the same parties conclusive as to any issues actually litigated in the prior action, or that could have been presented and litigated therein." *DiBattista*, 717 A.2d at 642 (citing *ElGabri v. Lekas*, 681 A.2d 271, 275 (R.I.1996)).

---

**2.** Approximately two months after the Family Court entered a decree dismissing their lawsuit, plaintiffs filed a "Motion to Vacate the Order Dismissing Their Appeal." The Family Court heard this motion to vacate on January 4, 1996, and ultimately denied it. The plaintiffs petitioned this Court for certiorari to review this decree, but we denied the petition.

Courts employ the doctrine of *res judicata* to maximize judicial efficiency by eliminating duplicative litigation, *Perez v. Pawtucket Redevelopment Agency*, 111 R.I. 327, 336, 302 A.2d 785, 791 (1973), ("*[r]es judicata* is a vehicle whose goal is the elimination of repetitive litigation"), because such lawsuits only serve to waste the courts' finite resources. *Res judicata* also operates to prevent "multiple and possibly inconsistent resolutions of the same lawsuit." *Gaudreau v. Blasbalg*, 618 A.2d 1272, 1275 (R.I.1993). As a result, a party defeated in one action may not maintain a later lawsuit based upon a ground that properly could have been asserted in the previous litigation. *See ElGabri*, 681 A.2d at 275 (citing *Wholey v. Columbian National Life Insurance Co.*, 69 R.I. 254, 262, 32 A.2d 791, 795 (1943)). Moreover, this Court has adopted the "transactional" rule governing the preclusive effect of the doctrine of *res judicata*, as stated in the Restatement (Second) Judgments § 24. *See ElGabri*, 681 A.2d at 276. Under this rule, all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action. *Id. Res judicata* "serves as an 'absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" *Garganta v. Mobile Village, Inc.*, 730 A.2d 1, 5 (R.I.1999) (quoting *ElGabri*, 681 A.2d at 275).

In both its original and amended versions, plaintiffs' "civil rights" complaint questioned the propriety of DCYF's revocation of plaintiffs' foster-care license. The plaintiffs alleged that defendants violated their due-process rights both during the revocation itself and during the later administrative proceedings. This same dispute over the license revocation, however, formed the crux of their previous administrative appeal—one that ended when the Family Court decree dismissed these claims. Before ruling on their administrative appeal, the Family Court afforded plaintiffs another opportunity to be heard and to raise DCYF's alleged due-process violations. After hearing plaintiffs' arguments, the Family Court judge dismissed the appeal for plaintiffs' failure to satisfy the statutory requirements for a reviewing court to grant relief under the APA.[3] Notably, this statute includes constitutional violations as grounds for reversing an administrative ruling. After dismissing plaintiffs' case, the Family Court justice then advised plaintiffs of their right to pursue appellate review of his decision to dismiss. Nevertheless, they failed to do so.

Pursuant to Rule 41(b)(3) of the Family Court Rules of Procedure for Domestic Relations, a Family Court dismissal order operates as an adjudication on the merits of the claim unless the order specifies otherwise; for example, by stating

---

3. The pertinent section of the APA, G.L.1956 § 42–35–15(g), provides:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error or law;
(5) Clearly erroneous in view of the other reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

that the dismissal is without prejudice.[4] Here, the Family Court dismissal decree contained no such provision; thus, it acted as an adjudication upon the merits of the DiBattistas' administrative appeal. When they failed to seek appellate review of the Family Court decree under § 42–35–16 (providing for Supreme Court review of final judgments in administrative appeals via a petition for certiorari), it became a final judgment and served to resolve all claims that they asserted or that they could have asserted arising out of the license revocation.[5] As a result, *res judicata* barred the DiBattistas' later attempt in Superior Court to relitigate alleged legal violations relating to the license revocation against DCYF and its officials.

▮▮ Likewise, *res judicata* barred plaintiffs' breach-of-contract claim because the Family Court's upholding of the license revocation necessarily foreclosed such a cause of action. Indeed, if DCYF had breached its contract with plaintiffs in connection with the license revocation, then the revocation would have been improper. For this reason, defendants' alleged violation of the home-boarding agreement between DCYF and plaintiffs was part and parcel of the original Family Court lawsuit challenging the license revocation. In short, plaintiffs' Superior Court complaint, as amended, was largely an attempt to relitigate the propriety of DCYF's revocation of their foster-care license. Consequently, the doctrine of res judicata barred such claims.

## II

### Tort Claims

We turn now to the remaining claims; that is, to those claims that the Superior Court dismissed on grounds other than *res*

---

4. Rule 41(b)(3) of the Family Court Rules of Procedure for Domestic Relations provides:

 "Effect. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision (b) and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits."

5. The DiBattistas suggest that the Family Court's dismissal decree did not constitute a final judgment because the document did not include a proper heading labeling it as a "Judgment" in the manner prescribed by Rule 1.17 of the Family Court Rules of Practice (providing that, except in divorce actions, "the term 'Judgment' shall be used to denominate the document which evidences the act of the court finally adjudicating the rights of the parties to the action"). But Rule 54(a) of the Family Court Rules of Procedure for Domestic Relations provides that the term "judgment" "includes a decree and any order from which an appeal lies." Rule 83 of the Family Court Rules of Procedure for Domestic Relations authorizes the Family Court (by a majority of its justices) to adopt rules of practice and general orders "to further regulate the practice and conduct of business therein," but only "to fill in any details that may be omitted in the rules [of procedure]." *Id.* at reporter's notes. Thus, the Rules of Practice as promulgated cannot negate, vary, or change the applicable Rules of Procedure. Because the decree was a final order and because the clerk of the Family Court entered it pursuant to Rule 58(a) of the Rules of Procedure after an oral decision by the court that all relief should be denied ("upon a decision by the court * * * that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court * * *. Every judgment shall be set forth on a separate document."), it was reviewable under § 42–35–16 (providing for Supreme Court review via a petition for certiorari). Thus, the decree constituted the practical and legal equivalent of a "judgment" under Rule 54(a), notwithstanding the clerk's failure to denominate it as a "Judgment" per Rule 1.17. Indeed, a contrary rule would allow form to triumph over substance because it would permit parties like the DiBattistas to negate the finality of orders and decrees merely by failing to assure that the document in the court record is denominated as a "Judgment."

*judicata.*[6] We agree with the Superior Court and conclude that any remaining claims in their second lawsuit that plaintiffs could not have raised in their original administrative appeal to the Family Court were also properly dismissed via summary judgment. With respect to these claims, plaintiffs failed to show that any material issue of disputed fact remained for trial or that the DCYF defendants were not entitled to judgment as a matter of law.

 Thus, for example, plaintiffs' defamation claim in the amended complaint alleged that a DCYF official told a television reporter that DCYF had removed plaintiffs' foster-care children from them because "there was a substantial risk of imminent harm." The plaintiffs also alleged that DCYF defamed them when it removed the children from school under a police escort after revoking their foster-care license.

 Courts are responsible for deciding as a matter of law whether the particular statement or conduct alleged to be defamatory is capable of containing a defamatory construction, taking into account the context of the statement in which the publication occurs and the plain and ordinary meaning of the words in the community in which the publication occurred. *See Swerdlick v. Koch,* 721 A.2d 849, 859–60 (R.I.1998). For a plaintiff to prove that a statement is defamatory, he or she must show that the statement is " 'false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred and contempt * * *.' " *Id.*

at 860. Given the undisputed fact that DCYF already had revoked plaintiffs' foster-care license when DCYF allegedly communicated this statement on television and removed the children from school under police escort, and given that the Family Court later rejected plaintiffs' legal challenge to the propriety of the revocation, we cannot say, as a matter of law, that the alleged statements and conduct were defamatory. Allowing unlicensed individuals such as plaintiffs to provide foster care to children after DCYF has revoked their license to do so for alleged misconduct would tend to expose the affected children to a substantial risk of imminent harm. Furthermore, under such circumstances, DCYF's decision to have the children escorted from school by the police was not defamatory.

 The plaintiffs' amended complaint also included allegations of intentional and negligent infliction of emotional distress. To successfully assert a claim for intentional infliction of emotional distress, a plaintiff must show extreme and outrageous conduct on the part of the defendant. *See Curtis v. State of Rhode Island Department for Children and Their Families,* 522 A.2d 203, 208 (R.I.1987). Although DCYF's swift action in this matter doubtlessly caused plaintiffs to experience emotional distress, plaintiffs have failed to allege, much less adduce, any facts that, if proven to be true, would indicate that DCYF's revocation of their license under these circumstances amounted to extreme and outrageous conduct.

 Further, both the torts of intentional and negligent infliction of emo-

---

6. The amended complaint included tort allegations of defamation, intentional and negligent infliction of emotional distress, and loss of consortium. In granting summary judgment, the Superior Court motion justice also addressed plaintiffs' allegation of conspiracy, one that they asserted in their original complaint, but which they omitted in the amended version. Because the filing of the amended complaint superceded the original pleading, plaintiffs effectively dropped the claim of conspiracy from the litigation before the court ruled on the summary-judgment motion, and, thus, we have no need to address it here.

tional distress require plaintiffs to allege and prove that physical symptomatology accompanied the distress. *Clift v. Narragansett Television L.P.*, 688 A.2d 805, 813 (R.I.1996); *Reilly v. United States*, 547 A.2d 894, 896 (R.I.1988). To defeat a motion for summary judgment, the DiBattistas could not rely upon "unsupported conclusory assertions of physical ills contained in the plaintiffs' complaint." *Clift*, 688 A.2d at 813. Other than generalized assertions in plaintiffs' amended complaint, the DiBattistas did not produce evidence of the requisite physical manifestations of their alleged emotional distress. Thus, as a matter of law, the emotional distress claims were not entitled to survive the summary-judgment motion.

## III

### The Plaintiffs' Other Arguments

The DiBattistas contend on appeal that the court did not afford them adequate notice that it would be addressing their tort claims when it ruled on defendant's motion for summary judgment. They suggest that the court denied them an opportunity to present evidence on these claims before the Superior Court entered summary judgment *sua sponte*. They argue that defendants premised their motion for summary judgment entirely on claim-and-issue preclusion grounds, and that the motion justice's conclusion that certain claims were not subject to this bar should have ended his inquiry. Alternatively, they argue that he should have notified plaintiffs that he would also address the merits of their tort claims so that they could come forward with all their evidence. The plaintiffs rely on dicta in the United States Supreme Court case of *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986), reciting the established ability of federal courts to grant summary judgment *sua sponte* when

the opposing party is put on notice of the court's intentions, and our recent per curiam decision *Kevorkian v. Glass*, 774 A.2d 22, 24 (R.I.2001). These cases, however, are distinguishable from the situation we face here.

■ In *Kevorkian*, the trial justice construed a portion of the defendant's pretrial memorandum as containing a motion for summary judgment. The court then proceeded to rule in favor of the motion without providing the plaintiff the statutory ten-day period to present a written response. *Kevorkian*, 774 A.2d at 24–25. We held that these circumstances required the trial justice to notify the opposing party that it intended to address the motion for summary judgment, thereby providing the opponent with an opportunity to respond. *Id.* Here, however, plaintiffs knew that defendants had moved for summary judgment, that the motion was pending before the court, that this Court had remanded the case so the parties could present all evidence that was pertinent to deciding the case on summary judgment, and that the court had afforded them both a hearing and an opportunity to respond. Indeed, plaintiffs filed two separate memoranda in opposition to the motion. In addition, plaintiffs' counsel raised the issue of infliction of emotional distress at the hearing, and the court then afforded both parties a three-week opportunity to amend the complaint or to submit other documentation pertaining to this claim before the court ruled. Under these circumstances, we conclude, the court afforded plaintiffs' sufficient notice that, to survive summary judgment, they had to produce evidence that would establish a prima facie case for each claim and that their tort claims were subject to the defendant's pending motion for summary judgment. Nevertheless, they failed to show that defendants were not entitled to judgment as a matter of law on these claims. Hence, *Celotex* and *Kevorkian* do not apply to this situation.

 Finally, the plaintiffs suggest that the defendants failed to assert any affirmative defenses in their answer to the plaintiffs' amended complaint, arguing that, as a result, the defendants thereby waived these defenses. "[T]he failure to raise an affirmative defense in a timely manner constitutes a waiver of that defense." *World–Wide Computer Resources, Inc. v. Arthur Kaufman Sales Co.*, 615 A.2d 122, 124 (R.I.1992). But the plaintiffs filed their amended complaint—to which the defendants' filed their answer—shortly before the motion justice ruled on the motion for summary judgment that was then pending before the court. The plaintiffs contend that the defendants' second answer replaced their initial answer, and, as a result, removed the affirmative defenses previously raised by the defendants from the trial justice's consideration, rendering summary judgment inappropriate. The plaintiffs, however, knew that the court was considering the previously filed summary-judgment motion based on both the prior and the amended pleadings, yet it failed to raise this argument before the motion justice, either in the form of an objection, or as a motion asking the court to treat the pending summary judgment motion as moot and requiring the defendants to resubmit a new motion for summary judgment in light of the amended pleadings. As a result, the plaintiffs waived their right to raise this issue for the first time on appeal, and their contention is not properly before us.

### Conclusion

For these reasons, we affirm the Superior Court's judgment and deny the plaintiffs' appeal.