Edward R. D'ALLESANDRO et al.

v.

Ronald TARRO, in his capacity as treasurer of the Town of Barrington et al.

No. 2003-218-Appeal.

Supreme Court of Rhode Island.

Feb. 2, 2004.

Michael S. Kiernan, Esq., for plaintiff.

Melody A. Alger, Esq., for defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The plaintiff,[1] Edward R. D'Allesandro (D'Allesandro or plaintiff), appeals from an entry of summary judgment in favor of the defendant, Ronald Tarro, in his capacity as treasurer of the Town of Barrington (the town).[2] The plaintiff argues that the hearing justice erroneously concluded that he assumed the risk of falling when he walked

---

1. Article I, Rule 3(b) of the Supreme Court Rules of Appellate Procedure allows two or more persons to file a joint notice of appeal and requires each person to pay the stipulated $150 filing fee pursuant to Article I, Rule 5(a) of the Supreme Court Rules of Appellate Procedure. A party's failure to pay the required fee "renders its appeal invalid." *Tateosian v. Celebrity Cruise Services, Ltd.*, 768 A.2d 1248, 1249 n. 1 (R.I.2001) (per curiam) (quoting *Kirby v. Planning Board of Review of Middletown*, 634 A.2d 285, 288 (R.I.1993)). From

the record, it appears that only Edward's filing fee was paid in this appeal, and therefore Barbara D'Allesandro is not a party before this Court.

2. Additionally, Thomas F. Atwell and Mary Rita Cooper Atwell were named as the defendants in the summary judgment motion at the trial court. The plaintiff did not name the Atwells as a party to this appeal.

backwards without looking behind him and fell over a large rock within a town right-of-way. We affirm the judgment of the hearing justice.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of the litigants and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time.

The hearing justice issued her oral decision granting summary judgment against plaintiff on February 27, 2003, and a written order was entered on March 18, 2003. The plaintiff filed a notice of appeal on March 12, 2003. At that time, the record did not contain a final judgment under Rule 54(b) of the Superior Court Rules of Civil Procedure. When this case came before this Court, we remanded to the Superior Court for entry of final judgment, which occurred on November 6, 2003. We treat the appeal, therefore, as if it had been filed after the entry of judgment. *Dovenmuehle Mortgage, Inc. v. Antonelli,* 790 A.2d 1113, 1114 n. 1 (R.I.2002) (per curiam).

■■■ This Court reviews the granting of a motion for summary judgment on a *de novo* basis. *DiBattista v. State,* 808 A.2d 1081, 1085 (R.I.2002). We will affirm a summary judgment "if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact

exists and that the moving party is entitled to judgment as a matter of law." *Id.* (citing *Woodland Manor III Associates v. Keeney,* 713 A.2d 806, 810 (R.I.1998)).

■■■ Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Santucci v. Citizens Bank of Rhode Island,* 799 A.2d 254, 257 (R.I.2002) (per curiam) (citing *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996); *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996)).

D'Allesandro alleges that, on May 1, 2000, he fell over a rock across the street from his home and suffered an injury to his shoulder. The rock was on a grassy public right-of-way owned by the town,[3] approximately six feet from the roadway designated as Orchard Avenue in Barrington, Rhode Island. He acknowledges that at the time of injury, he was walking backwards while looking in a forward direction, but alleges in his complaint that the town "negligently failed to maintain and keep safe the land adjacent to the roadway * * * by permitting large rocks to remain on said roadway and creating an unsafe passageway for pedestrians."

Initially, the town raised three arguments to support its position that this Court should affirm the judgment of the hearing justice. First, it averred that D'Allesandro assumed the risk of injury by walking backwards even though he was

---

**3.** In its brief, the town "vigorously denied" ownership of the subject property. In oral argument, however, the town conceded that plaintiff was not a trespasser because it was a public right-of-way. Additionally, the town agreed at the trial court hearing that the rocks are within the town owned right-of-way. The town introduced no evidence supporting its contention that it does not own the property at issue, while plaintiff submitted a survey completed by a registered surveyor showing that the property is part of the public right-of-way associated with the adjacent roadway.

aware of the risk created by the presence of the rocks. Secondly, it asserted that the rocks were a natural condition on the land, and thus the landowner owed no duty to "discover, remedy or warn." Thirdly, it asserted that D'Allesandro was a trespasser on the land, and therefore the town owed no duty of care to him. In oral argument, however, the town conceded that plaintiff was not a trespasser on the land because it was, in fact, a town right-of-way.

The underlying facts are straightforward and essentially undisputed. D'Allesandro had stored a truck cap for a couple of days on an empty lot across the street from the home in which he had lived for approximately twenty-five years. Believing the lot to be abandoned, he had not sought anyone's permission before storing the cap. He indicated that he had also parked his truck on the lot "from time to time."

On the morning in question, he was showing the truck cap to a potential buyer. In his deposition, D'Allesandro testified that he was standing in the public right-of-way "near the edge of the road" while the buyer inspected the cap. D'Allesandro said that after standing there for about a minute, or half-minute, he stepped back and fell over a rock into the street. He said that he was aware that there were rocks on the property, indicating that they had been there "quite some time" and were painted white. On the day he fell, however, he said the rocks were obscured by grass that had not been mowed.

 Generally, municipalities owe the same duty as other landowners "to 'maintain the[ir] property in a reasonably safe condition for the benefit of those persons who might come upon the land.'" *Bennett v. Napolitano*, 746 A.2d 138, 141 (R.I.2000) (quoting *Brindamour v. City of Warwick*, 697 A.2d 1075, 1077 (R.I.1997) (per cu-

riam)). We note that G.L.1956 § 24–5–1 provides that a town has a duty to keep "[a]ll highways * * * safe and convenient for travelers." We previously have determined that a "highway is wider than the roadway and includes the 'entire width' between the boundary lines of the public way, including the 'sidewalk, berm, or shoulder.'" *O'Gara v. Ferrante*, 690 A.2d 1354, 1357 (R.I.1997) (per curiam). We held in *O'Gara*, therefore, that a town has a duty to maintain vegetation within the boundary lines of a highway. *Id.*

The salient issue here, however, is assumption of the risk. It is clear from the transcript that the hearing justice based her decision on this theory. She ruled:

"On the day of the incident, knowing that the rocks were somewhere on the land and not knowing, according to his deposition specifically where the rocks are, [D'Allesandro] made a decision to walk backwards. I don't know how I can draw any other conclusion but that that was an assumption of the risk because I don't think his behavior on that day allows any other reasonable inference."

We need not address the issue of the town's negligence, therefore, because we agree with the hearing justice's assessment that D'Allesandro assumed the risk that caused his injury.

 The doctrine of assumption of the risk, if proven, "absolve[s] a defendant of liability for having created an unreasonable risk." *Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1064 (R.I.2001) (per curiam) (quoting *Walker v. Jackson*, 723 A.2d 1115, 1117 (R.I.1999) (per curiam) and *Rickey v. Boden*, 421 A.2d 539, 543 (R.I.1980)). "[A]n individual does not assume the risk of harm arising from another's conduct unless he knows of the existence of the risk

and appreciates its unreasonable character." *Rickey*, 421 A.2d at 543. Whether a plaintiff has assumed the risk of harm is generally a question for a trier of fact. *Id.* However, if only one rational inference can be drawn from the evidence on this issue, then the trial justice may treat the question as one of law. *Id.*

The facts of this case suggest that only one reasonable inference can be drawn, namely, that D'Allesandro voluntarily assumed a risk after he knew and understood the risk involved. The specific risk in this instance was the risk of tripping on the rock. He admits that, with full knowledge of the presence of large rocks in the area, he stepped backwards while looking in a forward direction. We conclude that he was fully aware of the risk of harm, and thus judgment as a matter of law is appropriate. *See Raimbeault*, 772 A.2d at 1064 (summary judgment affirmed when plaintiff had knowledge of the special hazards in using excavator); *Drew v. Wall*, 495 A.2d 229, 232 (R.I.1985) (directed verdict affirmed where decedent with knowledge of danger created by running an internal engine in enclosed space assumed risk of asphyxiation by restarting engine in closed pit while dizzy); *Rickey*, 421 A.2d at 544 (directed verdict affirmed after plaintiff assumed risk of injury by choosing to ascend narrow stairway with no handrail when other options were available).

In determining whether an individual was aware of a particular risk at the time of his or her injury, this Court will examine the record to learn "what the particular individual in fact saw, knew, understood, and appreciated." *Hennessey v. Pyne*, 694 A.2d 691, 699 (R.I.1997) (quoting *Loffredo v. Merrimack Mutual Fire Insurance Co.*, 669 A.2d 1162, 1164 (R.I.1996) (per curiam)). It is a "subjective standard, keyed solely on the observations and understandings of the plaintiff at the time of injury." *Habib v. Empire Productions, Inc.*, 739 A.2d 662, 664 (R.I.1999) (per curiam) (quoting *Martins v. Omega Electric Co.*, 692 A.2d 1203, 1205 (R.I.1997) (per curiam)).

In this case, D'Allesandro testified at deposition that he knew there were rocks on the property and that they had been there for "quite some time." Each rock was one to two feet in diameter and painted white. He maintained, however, that although he knew of the existence of the rocks, he did not see them when he entered the property that day because grass had grown over them, and thus he was unaware of their specific location at the time of his injury. He said that after showing the truck cap that he had stored on the vacant lot to a potential buyer, he stepped backwards, fell over one of the rocks, and landed in the street. He did not look behind him before stepping backwards.

D'Allesandro refers us to *Habib*, 739 A.2d at 665, for the proposition that "[t]o prove an assumption of [the] risk defense, one must show that the party who is alleged to have assumed the risk did in fact have actual knowledge of the precise risk before electing to encounter it." He argues that even though he may have had some general knowledge of the rock upon which he tripped, he could not see it because it was covered by overgrown grass. "The facts of this case do not suggest that only one reasonable inference [can be drawn] asserting that the plaintiff assumed the risk of this injury," he posits, and, therefore, "[t]he question as to whether the plaintiff's prior knowledge of the presence of the rocks should have made him aware of the exact location of the rock on the date of this incident is a question of fact which should only be decided by the trier of fact." We disagree.

A similar argument was advanced in *Walker*, 723 A.2d at 1116–17, in which the plaintiff-tenant injured herself by falling into holes or ruts created by the excavation of the property. This Court held that the hearing justice erred by granting summary judgment to the defendant landowner based on assumption of the risk because plaintiff's knowledge of the location of the specific concealed depressions into which she fell was a question of fact for the jury. *Id.* at 1118. That case is distinguishable, however, from the case at hand.

In *Walker*, the plaintiff indicated that it was the first time that she had ventured to that part of the yard since the excavation work began, and the record suggested that high, flattened grass or grass clippings covered up the holes or ruts. *Id.* at 1116, 1117. Thus, the Court concluded that "plaintiff neither observed nor otherwise became aware of their specific presence before stepping into them and injuring herself." *Id.* at 1117.

Conversely, D'Allesandro lived directly across the road for twenty-five years from the property with the large white rocks. He testified that he parked his truck on the abutting vacant lot "from time to time," and stored his truck cap there for a couple of days. Even though he alleges that the grass had overgrown the large rocks on the date of his injury, his situation is clearly different from that in *Walker*. Significantly, D'Allesandro had longstanding knowledge of the presence of the rocks. Even if the grass did cover them at the time, his knowledge was adequate to put him on warning that he was taking a risk by walking backwards without looking where he was going. We conclude that plaintiff's knowledge was sufficient for him to appreciate such risk.

Furthermore, in *Walker*, we recognized that a factual question existed concerning whether the defendant's conduct prevented her from using a significant portion of the premises over an extended period, and that "a reasonable jury could possibly conclude * * * that the defendant [landlord's] conduct unreasonably compelled her to assume this risk involuntarily." *Walker*, 723 A.2d at 1118. Clearly, the town in this case did not compel D'Allesandro to assume any risk.

The transcript of the summary judgment hearing reveals the following colloquy between the hearing justice and counsel for plaintiff:

"THE COURT: [H]ow can I find that someone who voluntarily walks backward without looking where they're going is doing something other than assuming the risk of whatever is behind them?

"[COUNSEL]: In this instance, there is no evidence that he saw that the rock was there on the date that this incident took place.

"THE COURT: Well, doesn't that make it worse from his perspective, rather than better? I mean, if he didn't see them, doesn't that impose even a greater duty on him to look where he's going?"

In reviewing the transcript, we believe that the hearing justice made a valiant attempt to discern a reasonable inference other than assumption of the risk. She could not, nor can we.

The judgment of the Superior Court is therefore affirmed, and the papers of the case are remanded to that court.