**Kerri LUCIER et al.**

v.

**IMPACT RECREATION, LTD., et al.**

**No. 2004–11–Appeal.**

Supreme Court of Rhode Island.

Jan. 26, 2005.

Kerri Morey, for Plaintiff.

Patricia A. Buckley, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

A young boy, two days shy of his thirteenth birthday, was seriously injured while skateboarding on a "quarter pipe"[1] at a commercial skate park in East Providence. His parents, Roland and Kerri Lucier (plaintiffs), filed this premises liability action against Impact Recreation, Ltd. (Impact), the business entity operating the skateboard facility; Kevin Robinson, one of its principals; and Eugene Voll, Impact's landlord, alleging (1) failure to maintain safe conditions, (2) failure by the landlord to ensure that the commercial tenant was not engaging in an activity that was inherently dangerous to the public at large, and (3) breach of duty by negligently permitting and maintaining dangerous conditions on the property. The plaintiffs also sued for loss of consortium.

Default was entered against Impact, but Voll answered and, after extensive discovery, filed a motion for summary judgment.[2] Finding that the commercial landlord owed no duty of care to the invitees of its lessee and that plaintiffs had failed to produce sufficient facts to demonstrate that skateboarding is an extremely dangerous activity, the motion justice granted summary judgment, from which plaintiffs now appeal. Because our *de novo* review supports the motion justice's conclusions, we affirm the judgment.

### Facts and Travel

At the time of the injury, Impact leased an 8,500–square–foot portion of a 30,000–square–foot building from Voll. The lease between Impact and Voll restricted the use of the premises to a "[b]icycle, skateboarding and in line skating center, with retail sales incidental thereto." Impact was required to obtain Voll's approval for any change in use, and Voll could not unreasonably withhold such approval. Under the terms of the lease, Voll was required to maintain all exterior and structural portions of the building, while Impact was to maintain the interior part of the building, as well as the exterior areas of

---

1. In his deposition, the minor described a half pipe as "a vertical ramp" and the quarter pipe as "half of a half pipe, half a vertical ramp * * *. It was about five feet high with a foot of vertical."

2. Subsequent to the filing of this appeal on May 17, 2004, Robinson answered the second amended complaint. The plaintiffs filed a motion for entry of default against Robinson, which the Superior Court denied on June 1, 2004.

the property, such as the sidewalk, parking area, and driveways. Pursuant to paragraph 12 of the lease, "[a]ll alterations and improvements [were] subject to the Landlord's prior approval of plans and specifications and such reasonable conditions * * * as the Landlord deem[ed] reasonably appropriate." The lease further provided that Impact could install trade fixtures in the leased premises, and that these trade fixtures would, notwithstanding the manner of their installation, remain the property of Impact. The lease also obligated Impact to maintain a general liability policy through the Boy Scouts of America, and to require that all participants execute a waiver and release of liability as a prerequisite to participating in activities on the premises.

On the evening of March 16, 2001, Timothy Lucier's father brought him and several of his friends to Impact to skateboard to celebrate Timothy's birthday. At the skate park, Timothy paid for himself and his friends and his father signed the waiver. After arriving at the facility, Timothy donned a helmet, kneepads, and elbow pads, and then he and his friends rode back and forth on a "half pipe" waiting for the crowd of people to leave.[3] After about an hour, Timothy and his friends skated to the "quarter pipe." Timothy climbed on top of the quarter pipe and, as he pushed forward to go down the ramp, the front wheel of his skateboard caught inside a "nub" or "little tiny hole" in the ramp, causing the tail of his skateboard to swing around in a clockwise direction. At his deposition, Timothy said that in an attempt to execute a safety maneuver to avoid falling on his face, he twisted off the skateboard and fell on his right leg causing it to snap. Timothy testified that after he fell he looked back at the ramp and saw that there was a split in the wood covering the ramp. Timothy's fall resulted in a spiral fracture in a growth plate of his right leg.

## Standard of Review

This Court reviews the granting of a motion for summary judgment on a *de novo* basis. *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002). "[W]e will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (citing *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998)). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *D'Allesandro v. Tarro*, 842 A.2d 1063, 1065 (R.I.2004) (quoting *Santucci v. Citizens Bank of Rhode Island*, 799 A.2d 254, 257 (R.I. 2002)).

## Analysis

It is a fundamental principle of law that "[a] defendant cannot be liable under a negligence theory unless the defendant owes a duty to the plaintiff." *Santucci*, 799 A.2d at 256 (quoting *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994)). This

---

**3.** Timothy explained that the facility had a half pipe with a spine. He described the equipment as a "vertical ramp" with a "vertical connect between each ramp." A "half pipe" is a type of ramp that is U-shaped. Skateboarding glossary at http://www.expn.go.com/glossary/skt/g-l.html. Last visited January 25, 2005. A "spine ramp" is "[t]wo half pipes placed back to back creating a double U shape." *Id.* at s-v.html.

duty of care element of negligence "is an obligation imposed by the law upon a person. It requires that person to conform his or her actions to a particular standard." *Kuzniar v. Keach*, 709 A.2d 1050, 1055 (R.I.1998). Whether a duty exists in a particular case is a question of law for the trial or motion justice. *Id.* "In determining whether such a duty exists, the court considers 'all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations and notions of fairness.'" *Mallette v. Children's Friend and Service*, 661 A.2d 67, 70 (R.I.1995) (quoting *Kenney Manufacturing Co. v. Starkweather & Shepley, Inc.*, 643 A.2d 203, 206 (R.I. 1994)). "If no such duty exists, then the trier of fact has nothing to consider and a motion for summary judgment must be granted." *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I.1987).

### Premises Liability

Counts 1 and 3 of plaintiffs' second amended complaint are both predicated on Voll's (and the other defendants') alleged failure to safely maintain the premises. Count 1 specifically avers that defendants breached their duty "to adequately and safely maintain the Property," and count 3 alleges that defendants breached their duty "to maintain the Property in a reasonably safe condition for invitees * * * by negligently permitting and maintaining dangerous conditions on the Property including, but not limited to, a hole in one of the skateboarding ramps * * *." We agree with the motion justice's characterization that both of these counts are essen-tially the same, as both sound in premises liability.

■ "Premises liability" is defined in Black's Law Dictionary 1199 (7th ed. 1999) as "[a] landowner's or landholder's tort liability for conditions or activities on the premises." Premises liability law in Rhode Island "imposes an affirmative duty upon owners and possessors of property: 'to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * include[ing] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition.'" *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 935 (R.I. 2003) (quoting *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 752 (R.I.2000)).

■ In the case before us, however, plaintiffs' claims against Voll are predicated on a breach of his alleged duties as a landlord. "At common law a landlord was not liable for injuries sustained by a tenant or a guest on the leased premises unless the injuries resulted either from a latent defect known to the landlord but not to the tenant or from the landlord's breach of a covenant to repair in the lease." *Errico v. LaMountain*, 713 A.2d 791, 793 (R.I.1998) (citing *Ward v. Watson*, 524 A.2d 1108, 1109 (R.I.1987); *Coppotelli v. Brewer Yacht Yard at Cowesett, Inc.*, 636 A.2d 1326, 1327 (R.I.1994); *McGuire v. Folly Landing Restaurant, Inc.*, 636 A.2d 1325, 1326 (R.I.1994); *Munzi v. Kennedy*, 538 A.2d 1015, 1016 (R.I.1988)). Although this common-law rule no longer applies to residential leases,[4] the lease in question clearly

---

4. The Residential Landlord and Tenant Act, G.L. 1956 chapter 18 of title 34, enacted in 1986 by P.L. 1986, ch. 200, § 2 (effective Jan. 1, 1987), abrogated the common law's general rule. We previously have said that "the act's intended and actual effect is to supersede any common-law rules relating to residential tenants and landlords in conflict with its provisions." *Errico v. LaMountain*, 713 A.2d 791, 794 (R.I.1998).

is commercial; and, concerning nonresidential property, the general rule in Rhode Island remains that a landlord is not liable for injuries that the guest of a tenant suffers on the leased premises, unless the injury results from the landlord's breach of a covenant to repair in the lease, or from a latent defect known to the landlord but not known to the tenant or guest, or because the landlord subsequently has assumed the duty to repair. *See East Coast Collision & Restoration, Inc. v. Allyn,* 742 A.2d 273, 276 (R.I.1999) ("absent an explicit covenant to the contrary, the lessor of nonresidential space has no duty to repair or maintain that portion of the premises leased to the lessee"); *Coppotelli,* 636 A.2d at 1327 ("a landlord * * * is not liable for injuries sustained by a tenant or a guest * * * on the tenant's leased premises unless the injuries result from a latent defect known to the landlord but not to the tenant or from the landlord's breach of a covenant to repair"); *Izen v. Winoker,* 589 A.2d 824, 828 (R.I.1991) ("one who assumes a duty to perform an act must do so with reasonable care whether or not that person had an obligation to perform the act or repairs prior to assuming the duty").

■ Here, we conclude that plaintiffs have not shown any of the exceptions to the general rule that a commercial landlord is not liable for injury to third persons caused by the tenant's negligence. First, the injury did not result from Voll's breach of a covenant to repair in the lease; the lease contained no covenant for Voll to repair or maintain the interior of the premises or the installed equipment. Rather, the lease explicitly limited Voll's responsibility to maintaining the structural portions of the building. Second, plaintiffs do not contend that the injury resulted from a latent defect known to Voll and not to the lessee. Third, there is no evidence that after entering into the lease Voll either assumed a duty to repair or, in fact, made repairs but did so in a negligent manner.

■ The plaintiffs argue, alternatively, that Voll never surrendered full possession of the premises; rather, they contend that he retained control of the property demised to Impact under the provisions of the lease. Specifically, according to the terms of the lease, Voll was responsible for maintaining the structure, painting the facility, and repairing the roof; Impact's use of the premises was restricted to an indoor bicycle, in-line skating and skateboard center; Impact could not make any alterations or improvements to the premises without Voll's previous approval of the plans and specifications; and Voll retained the right to enter the property "at all reasonable times" to determine whether the premises were in good condition. On appeal, plaintiffs contend that these provisions evince the retention of control by Voll sufficient to impose an "affirmative duty to exercise reasonable care for the safety of persons reasonably expected to be on the premises."

■ We disagree. "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term [of the lease]. The lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 63 at 434 (5th ed. 1984). The lease provisions plaintiffs rely on did not give Voll control over the property, but rather were merely to protect Voll's investment and reversionary interest in the property. These provisions were nothing more than what any prudent landlord would include in a commercial lease.

■ The plaintiffs failed to present any facts demonstrating that Voll remained in control of the premises. Moreover, the lease clearly provided that the obligation to maintain the interior part of the building was on the lessee, Impact. We further note that "a provision in a lease reserving to the lessor the right to enter and make repairs * * * does not obligate the lessor to make repairs." *Allyn*, 742 A.2d at 276; *Givens v. Union Investment Corp.*, 116 R.I. 539, 544, 359 A.2d 40, 42 (1976). Additionally, the lease provided that Impact could install trade fixtures, which would remain its property to be removed upon termination of the lease. It is uncontradicted that the injury occurred when the front wheel of Timothy's skateboard caught in a hole in the plywood quarter pipe, just such a trade fixture installed by Impact.

### Negligent Entrustment

■ Count 2 of plaintiffs' second amended complaint alleged that Voll, as landlord, breached "a duty to ensure that the commercial tenant who was renting his premises was not engaging in an activity that was inherently dangerous to the public at large." In essence, plaintiffs advance the theory of negligent entrustment as a means for recovery. To repeat a refrain from our opinion in *Regan v. Nissan North America, Inc.*, 810 A.2d 255, 257 (R.I.2002): "To date, this Court has not recognized negligent entrustment as a basis for liability, and we decline to do so in this case."[5]

On appeal, plaintiffs frame the issue as follows: "Where a landowner lets his or her premises for the purpose of carrying on an inherently dangerous activity, he or she has a nondelegable duty to ensure that reasonable precautions are taken in connection with carrying out that activity. * * * For this reason, the law imposes an affirmative duty of care on landowners who let his or her [sic] property for the purpose of carrying on an activity that gives rise to an unreasonable risk of injury."

To support their theory, plaintiffs assert that Voll acknowledged at the inception of the lease that skateboarding was a dangerous activity. Moreover, he required Impact to maintain a liability insurance policy for its patrons and required all participants to sign a waiver and release of liability form. Lastly, they posit that "the issue of whether extreme skateboarding is an inherently dangerous activity presents a question that should be determined by a finder of fact," thus precluding summary judgment.

We need not address the merits of plaintiffs' negligent entrustment claim because they have failed to present any competent evidence that skateboarding is an inherently dangerous activity. As the motion justice aptly noted, the mere fact that the landlord thought the activity to be sufficiently hazardous to insist upon the signing of waivers and the procurement of liability insurance was irrelevant. Here, plaintiffs provided no basis for categorizing Impact's skate park as an inherently dangerous activity.

### Conclusion

■ In opposing a motion for summary judgment, it is incumbent on the nonmov-

---

5. Although we do not reach the merits of the negligent entrustment doctrine, an issue that we might be invited to revisit under appropriate circumstances, we note, that to impose a duty of care as plaintiffs urge arguably would place uncertain duties upon lessors of commercial real estate. Such a broad public policy decision generally is best left to the Legislature. *See Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996) ("We have long held, however, that the creation of new causes of action is a legislative function.").

ing party to prove "by competent evidence the existence of a disputed material issue of fact." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996). Here, the plaintiffs have failed to do so. It is clear from the evidence that the injury was caused by an alleged defect in the quarter pipe or ramp—a trade fixture installed, maintained, and owned by the tenant. The landlord had relinquished full control of the demised premises, and was under no contractual obligation to maintain the interior part of the building occupied by the tenant or to inspect the trade fixtures or indeed any portion of the interior for dangerous conditions. Moreover, the plaintiffs failed to produce evidence upon which a trier of fact could conclude that skateboarding is an "inherently dangerous" activity. In short, we concur with the motion justice's assessment that the plaintiffs had failed to demonstrate any "duty-triggering" facts, and therefore Voll owed no duty of care to the plaintiffs.

We therefore affirm the judgment of the Superior Court, to which we return the papers in the case.