DECISION
Before this Court is Plaintiff's Complaint which contains a count seeking declaratory judgment, as well as a count for tortious interference with contractual relations, and a count for a claim referred to as `predatory lending.' Pursuant to R.I.G.L. § 8-2-13 and § 9-30-1 et. seq., the declaratory relief sought by Plaintiff seeks a judgment that this Court quiet title to certain real property located at 739 Manton Avenue, Providence, Rhode Island ("the Property"), which at the time of the foreclosure sale was owned by Plaintiff. The claim for damages is for Defendants' alleged intentional interference with a residential lease on the Property. Presently before this Court is Defendants' Motion for Summary Judgment as to all counts of the Complaint.
 I Facts and Travel
The undisputed facts are as follows — Defendants Mortgage Electronic Registration Systems ("MERS") and Beltway Capital, LLC ("Beltway") (collectively, *Page 2 
"Defendants") move for summary judgment against Plaintiff Osaretin A. Porter ("Plaintiff") pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure.[1] This action arises from Plaintiff's challenge to the validity of a foreclosure sale conducted by MERS on July 24, 2009, with respect to the Property.
On December 18, 2006, Plaintiff executed a promissory note in favor of First NLC Financial Services, LLC ("First NLC") in the amount of $247,500 in connection with the purchase of the Property. (Def. Ex. B.) On the same day, Plaintiff executed a mortgage as security for payment of the Note, naming First NLC as the Lender and naming MERS as the mortgagee and as nominee of First NLC and its successors and assigns. (Pl. Ex. 1, and Def. Ex. A.) On December 19, 2006, the mortgage was recorded in the Land Evidence records for the City of Providence at Book 8451 at Page 182, et. seq. Id.
On November 30, 2007, Plaintiff entered a lease effective December 1, 2007 through November 30, 2008, renting the property to third parties. (Def. Ex. I.) At the time of the lease, the property was subject to Section 8 Federal Housing Assistance.Id. According to Defendants, the lease has now expired by its terms.
On January 6, 2009, Plaintiff filed a Petition for Chapter 13 Bankruptcy. (Def. Ex. C.)[2] On January 26, 2009, Plaintiff voluntarily dismissed the bankruptcy proceedings and the case was closed on February 12, 2009. Id. On April 2, 2009, Plaintiff filed another Petition for Chapter 13 Bankruptcy Petition. (Def. Ex. D.) On *Page 3 
May 1, 2009, Plaintiffs once again voluntarily dismissed the bankruptcy proceedings and the case was closed on May 27, 2009.Id. On July 23, 2009, Plaintiff filed a third Petition for Chapter 13 Bankruptcy, which was pending on the date of the foreclosure sale. It is unclear if MERS sought relief from the automatic stay prior to the foreclosure. After Plaintiff defaulted as to her payment obligation, on July 24, 2009, MERS conducted a foreclosure sale at which MERS was the highest bidder. (Def. Ex. F.) At the time of the sale, Beltway was servicing both the Note and the Mortgage. (Bitz Aff. ¶ 5). On August 10, 2009, MERS assigned its bid to Beltway. (Def. Ex. G.) The assignment was recorded in Providence at Book 9496, Page 121, et.seq. Id. On the same day, MERS conveyed the property to Beltway. (Def. Ex. H.) On August, 21, 2009, Plaintiff voluntarily dismissed the third Bankruptcy case, and the case was closed on September 21, 2009. (Def. Ex. E.) After the foreclosure sale on April 30, 2010, Plaintiff filed the instant action.
 II Standard of Review
This Court will only grant a motion for summary judgment if "after reviewing the admissible evidence in the light most favorable to the nonmoving party[,]" there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.Liberty Mut. Ins. Co. v. Kaya, 947 A.2d 869, 872 (R.I. 2008) (quoting Roe v. Gelineau, 794 A.2d 476, 481 (R.I. 2002)), Super. R. Civ. P. 56(c).
In opposing a motion for summary judgment, the nonmoving party (in this case Plaintiff) "`has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, *Page 4 
mere conclusions or mere legal opinions.'" Liberty Mut.,947 A.2d at 872 (quoting D'Allesandro v. Tarro,842 A.2d 1063, 1065 (R.I. 2004)). To meet this burden, "`[a]lthough an opposing party is not required to disclose in its affidavit all its evidence, he [or she] must demonstrate that he [or she] has evidence of a substantial nature, as distinguished from legal conclusions, to dispute the moving party on material issues of fact.'" Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998) (quoting Gallo v. Nat'l NursingHomes, Inc., 106 R.I. 485, 489, 261 A.2d 19, 21-22 (1970)).
 III Discussion
Defendants assert that this action should be dismissed because MERS had both the contractual and statutory authority to foreclose on the Property as the mortgagee and the nominee of the lender and the lender's successors and assigns. Plaintiff disagrees, arguing that there exists a genuine issue of material fact as to whether:
 "the self-interested transaction between Defendant MERS to itself through its agent Jeffrey Craig was valid; Second, whether a tortious interference of contract occurred between Defendant and Plaintiff's tenants in the property; Third, whether Defendant First NLC Services created a predatory lending situation in violation of Rhode Island statute." (Pl.'s Mem. in Opp'n to Def.s' Mot. for Summ. J.)
Specifically, Plaintiff argues that First NLC terminated its agency relationship with MERS by filing for bankruptcy protection in the Southern District of Florida and failed to affirm its contract with MERS pursuant to Section 365 of the Bankruptcy Code; Plaintiff claims that the result is that the foreclosure conducted by MERS is and was null *Page 5 
and void.[3] Plaintiff also posits a variety of technical irregularities that allegedly result in the invalidity of the foreclosure, including the fact that MERS was not the holder of the note or mortgage deed on the date of the foreclosure sale, and that MERS and Beltway were not acting as an agent of First NLC, the lender; and that there is no chain of title to MERS or Beltway or valid assignment of the Note payable to First NLC because there is no recorded power of attorney or assignment of interest from First NLC. Additionally, Plaintiff alleges that Defendants tortiously interfered with a rental contract (the lease) by coercing and scaring her tenants into moving out of the property.
Despite the fact that "the party opposing a summary-judgment motion `has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions,'" Plaintiff has included with her objection no affidavits and no reference to evidence of any kind.Parker v. Byrne, 996 A.2d 627, 632 (R.I. 2010) (quotingCredit Union of Central Falls v. Groff,966 A.2d 1262, 1267 (R.I. 2009)). In fact, other than in argument, Plaintiff has not even established that she had a tenant at the property. Plaintiff's citation to case law or any other sort of legal authority has been similarly sparse, sporadic and scant, both in writing and during oral argument.
This Court finds that Justice Silverstein's rationale inBucci v. Lehman Bros. Bank, (dealing with similar issues and similar facts) to be well-reasoned, thoughtful and concise. 2009 WL 3328373 (R.I. 2009)[4] Based upon Plaintiff's inability to distinguish *Page 6 
the facts of the case at bar from Bucci, except for certain bankruptcy issues discussed supra, this Court will proceed to grant Defendants' Motion for Summary Judgment by adopting the rationale used in the Bucci case. This Court believes that Bucci is consistent with the rationale of In reHuggins, 357 B.R. 180, 183 (Bankr. D. Mass. 2006), and also appears to be consistent with the holdings of the majority of courts which have addressed the issue of whether MERS has standing to foreclose. See, e.g., MERS v. Azize,965 So.2d 151 (Fla. Dist. Ct. App. 2007); MERS v. Revoredo,955 So.2d 33 (Fla. Dist. Ct. App. 2007). This holding is not only legally correct, but does not work an injustice on the Plaintiff as the borrower. Plaintiff undisputedly borrowed the funds to buy her home, arranged for the home to serve as security for the Note, and subsequently defaulted by her nonpayment under the Note. No holding of this Court should invalidate the foreclosure, which Plaintiff agreed would ultimately be the consequence of nonpayment of the mortgage loan.[5]
 A Contractual Authority for MERS to Foreclose
Similar to the case in Bucci, here the plain language of the Mortgage, signed by Plaintiff as Mortgagor, authorizes MERS to exercise the statutory power of sale contained in the recorded mortgage instrument. (Def.'s Ex. A). This Court views the mortgage instrument as a contract. As such, "[i]f the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written." Young v. Warwick RollermagicSkating Center, Inc., 973 A.2d 553, 559 (R.I. 2009) *Page 7 
(quoting Gorman v. Gorman,883 A.2d 732, 739 n. 11 (R.I. 2005)). "If the terms are found to be unambiguous, . . . the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms of the contract." Id. at 559-60 (quotingZarrella v. Minnesota Mutual Life Insurance Co.,824 A.2d 1249, 1259 (R.I. 2003)). "When a contract is determined to be clear and unambiguous, then the meaning of its terms constitute a question of law for the court. . . . In determining whether or not a particular contract is ambiguous, the court should read the contract in its entirety, giving words their plain, ordinary, and usual meaning." Id. at 558 (internal quotations omitted).
In the instant case, the language of the contract is unambiguous and clear — "MERS . . . is acting solely as a nominee for Lender [first NLC] and Lender's successors and assigns . . . MERS is the mortgagee under this Security Instrument." (Def.s' Ex. A at 1). Plaintiff specifically granted to MERS, as Mortgagee and Lender's nominee, the Statutory Power of Sale. (Id. at 3). Similar to the case in Bucci, here the mortgage itself contains a direct grant to MERS of the right to foreclose. The Plaintiff agreed to this term. While Plaintiff argues that First NLC's filing for bankruptcy disrupted its agency agreement with MERS, Plaintiff has offered no evidence to support such a contention, or even to support the fact that First NLC has declared bankruptcy. Plaintiff has not cited to a single provision of the Bankruptcy Code, or any interpretation thereof to support her claim that the First NLC Bankruptcy (if indeed there was such a bankruptcy) in any way affected Plaintiff's grant of authority to MERS to enforce the statutory power of sale contained in the mortgage. Since Plaintiff specifically and expressly agreed by her execution of the mortgage that MERS could act as mortgagee and nominee of the lender, and its successors and assigns, she cannot now contend that MERS did not have the right *Page 8 
to initiate foreclosure proceedings. See e.g.,Morgera v. Countrywide,2010 U.S. Dist. LEXIS 2037, *22 (E.D. Ca.); Hilmon v. MERS,2007 WL 1218718, *2 (E.D.Mich.). Moreover, whatever financial entity currently holds the beneficial interest of the Note, MERS is designated the nominee for the current beneficial owner of the Note based upon the broad language contained in the Mortgage Agreement.
 B Statutory Authority for MERS to Foreclose
Plaintiff's contention that the "Rhode Island statute does not authorize MERS to become a statutory `mortgagee'" is as without merit as it is without citation to legal authority. As elucidated by Justice Silverstein in Bucci, "[t]he fact that MERS acts in a nominee capacity for the lender and the lender's successors and assigns does not diminish MERS's role as the mortgagee nor is there created a new legal term `nominee-mortgagee'" as Plaintiff contends. 2009 WL 3328373 at *6. Instead, G.L. § 34-11-22 allows "the mortgagee or his, her or its executors, administrators, successors or assigns" to exercise the Power of Sale in a mortgage.
Plaintiff also contends that MERS cannot be a mortgagee as contemplated by statute because Plaintiff does not make payments to MERS, [6] and MERS does not hold any property. Here again the Court finds Justice Silverstein's reasoning in Bucci to be persuasive — if this or any Court would construe § 34-11-21 according to Plaintiff's suggestion, it would mean that no mortgagee and no lender would be able to use a mortgage servicer in connection with real estate mortgages. This Court will not construe *Page 9 
a legislative enactment to reach an absurd result. SeeBrennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987).
Servicing arrangements between mortgagees and servicing companies have indeed become part of the commercial practice in Rhode Island and in other jurisdictions. There is nothing unlawful or inherently unjust when a company acts as the servicer for a mortgage. As stated in Bucci, "[c]learly the General Assembly envisioned a role for mortgage servicers in the mortgage lending industry."Bucci at *12. Accordingly, this Court finds on the undisputed facts presented by the movants that MERS, while not the lender, may invoke the statutory power of sale as the mortgagee and nominee for the lender, and that the foreclosure sale was valid in all respects.
 C Plaintiff's Claim for Tortious Interference
Plaintiff's claim for tortious interference is based upon a theory that Defendants' act of foreclosure resulted in certain tenants breaking their leases and terminating their tenancy at the foreclosed property. "To prevail on a claim of tortious interference with contractual relations, a plaintiff must show (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom." Tidewater Realty, LLC v. State,942 A.2d 986, 993 (R.I. 2008). Mere intentional interference will not suffice; the interference must be improper. Id. (citingAvilla v. Newport Grand Jai Alai, LLC,935 A.2d 91, 98 (R.I. 2007)). Based upon the Court's analysissupra, Defendants' foreclosure on the property was proper. Accordingly, they were fully within their rights to conduct the foreclosure sale, even if the foreclosure sale disrupted Plaintiff's tenancy relationship with some *Page 10 
unknown and unidentified tenant. There is no evidence presented by Plaintiff to raise a genuine issue of fact with respect to the fact of a tenancy or any reason for Plaintiff's tenant vacating the premises, nor has there been any showing of Defendants' knowledge of such tenancy. Accordingly, it appears at most that the tenant's departure was incidental to a lawful foreclosure sale and not based on any intention of Defendants to interfere with Plaintiff's lease.
 IV Conclusion
Based upon the foregoing, Defendants' Motion for Summary Judgment is GRANTED as to all counts of Plaintiff's Complaint.[7]
Accordingly, Plaintiff's Complaint is DISMISSED. Counsel for the prevailing party shall submit an Order and Form of Judgment in accordance with this decision.
[1] First NLC Financial Services, LLC ("First NLC") was the original Lender under the mortgage, and has not joined this motion.
[2] It should be noted that the only documents presented by Defendants (movants) in support of the facts concerning the bankruptcies are printouts of the docket sheets. While Plaintiff has not contested this fact, it is immaterial to the issues at hand except inasmuch as it provides a factual context.
[3] Plaintiff has offered no competent evidence to support her contention that First NLC declared bankruptcy.
[4] Since Justice Silverstein's decision in Bucci, the Presiding Justice, by way of an administrative order, assigned all of the cases involving MERS, or similar foreclosure cases, to a single Justice of this Court.
[5] Although it is clear our nation's economy has been rocked in part by the overly generous lending practices of the mortgage industry, that economic reality should not result in this lender or its successors and assigns being deprived of the right to realize on the collateral, upon the borrower's default.
[6] Although based on this rationale, no party could be considered a mortgagee as of May 1, 2008 — the time at which the Note went into default. (Bitz Aff. ¶ 9.)
[7] While Plaintiff also alleges a count claiming predatory lending in her Complaint, she points to no facts or authority to support such a claim. Further, such a claim has not been pursued in Plaintiff's response to Defendants' Motion for Summary Judgment.
 *Page 1