### MARTEL INVESTMENT GROUP, LLC

v.

### TOWN OF RICHMOND et al.

No. 2008–152–Appeal.

Supreme Court of Rhode Island.

Nov. 9, 2009.

---

Elizabeth Noonan, Esq., Providence, for Plaintiff.

James P. Marusak, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## O P I N I O N

Justice GOLDBERG, for the Court.

Martel Investment Group, LLC (Martel) appeals from a Superior Court decision granting summary judgment in favor of the defendant, Town of Richmond (Richmond or town).[1] This case came before the Supreme Court for oral argument on September 29, 2009, pursuant to an order directing both parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On September 15, 2005, Martel purchased a parcel of real estate at 1210 Main Street in Richmond, the former site of a Bickford's restaurant. The town previously had designated the property as part of the "general business district," established "to provide areas of commercial uses that depend on greater volumes of vehicular traffic and highway related uses." Town of Richmond Zoning Ordinance § 18.12.020E. (Zoning Ordinance). Operation of a restaurant was among the uses specifically permitted in the business district. Zoning Ordinance § 18.16.010, Use Codes 581 and 583. Martel purchased the property with the intention of operating an adult-entertainment business; however, it did not disclose this to the town. On October 5, 2005, Martel applied for a building permit to renovate the building for its intended use. The town issued the permit on October 7, 2005.[2] In response to the permit application question concerning the proposed use, Martel indicated simply "retail" without further elaboration.

Although the precise moment that the town became aware that Martel intended to open an adult-entertainment business is unclear, there is no dispute that on November 17, 2005, approximately one month after issuing the building permit, the

1. Martel also filed suit against W. Michael Sullivan, Jennifer P. Anderson, Kevin Gosper, Henry R. Oppenheimer and Jason J. Proulx in their capacities as council members of the Town of Richmond, Melanie Jewett, in her capacity as the town planner of the Town of Richmond, Walter Prescott, Nancy Hess, Philip Damicis, John Fox, Charles W. More, William Bokon and Mark Robar in their capacities as members of the planning board of the Town of Richmond, and Gary Tedeschi, in his capacity as treasurer of the Town of Richmond. For the sake of simplicity, we refer to the entire group of defendants as the town.

2. The town subsequently issued Martel permits related to electrical, plumbing, and mechanical work on the site.

town's planning board proposed an amendment to the zoning ordinance that would prohibit the operation of an "adult entertainment business" throughout the town, except for the industrial zoning district. The planning board's proposal was adopted on January 3, 2006. *See* Zoning Ordinance § 18.08.043.

On December 12, 2005, the town, through its zoning enforcement officer, informed Martel that because it was proposing to change the property's use from "restaurant to retail," a development-plan review was required under § 18.54.010.-D.2. Section B. of § 18.54.010 also provides that "[n]o building permit may be issued for any building within the purview of this chapter except in conformance with an approved development plan review."[3] It was not until January 20, 2006, that Martel applied for development-plan review and wrote in its submission that, "[b]ased upon the issuance of the various permits, and the representations of town officials, it was Martel's understanding that no formal development review was required as it was changing from one allowable use to another, thus the town was waiving the requirement under Section 18.54.010.D.2 * * *." By the time Martel applied, however, its proposed use was prohibited by newly amended § 18.08.043. By letter, dated February 1, 2006, the town solicitor notified Martel that its application for development plan review was rejected.

Martel filed this suit against the town on May 3, 2006, contending that the town

should be equitably estopped from enforcing the amended zoning ordinance because Martel reasonably had relied on the various construction permits that the town had issued. Martel also sought a declaratory judgment that it had a vested right in its proposed use and the newly amended ordinance could not be enforced against it. Additionally, Martel sought a writ of mandamus ordering the town to initiate development-plan review. Finally, Martel alleged that the town's actions constituted intentional interference with its prospective contractual relations. On March 23, 2007, after discovery, Martel moved for summary judgment on all its claims. In response, the town filed a motion requesting additional discovery time pursuant to Rule 56(f) of the Superior Court Rules of Civil Procedure. The hearing justice granted the town's motion and postponed the summary judgment hearing until August 20, 2007. On July 23, 2007, however, the town filed a cross-motion for summary judgment. This became a point of contention between the parties, and Martel moved to strike the town's cross-motion for summary judgment. Martel argued that, by asking for additional discovery solely so that it could respond to Martel's summary-judgment motion, the town had violated Rule 56(f) and had misled the court by using the time to prepare its own summary-judgment motion.

On August 20, 2007, after hearing arguments of counsel, a second hearing justice entered summary judgment in favor of the town.[4] He primarily relied on this Court's opinion in *Town of Johnston v. Pezza,* 723

**3.** Section 18.54.010A. of the Town of Richmond Zoning Ordinance provides in relevant part: "Development plan review is required for all permitted uses and special permit uses other than one- or two-family dwellings or accessory buildings."

**4.** The second hearing justice's decision did not mention Martel's concurrent motion to

strike the town's summary-judgment motion. Although neither party included an official transcript of the hearing on August 20, 2007, a review of the transcript attached as an exhibit to the town's Sup.Ct. R. 12A Statement reveals that the second hearing justice heard and denied Martel's motion to strike.

A.2d 278, 283 (R.I.1999), in which we held that the doctrine of equitable estoppel does not apply to instances in which a building official acts outside the authority vested in the official by the zoning ordinance. In addition, the hearing justice found that Martel had failed to notify the town of its intentional-interference with contractual-relations claim at least forty days prior to initiation of suit in accordance with G.L. 1956 § 45–15–5; and, therefore, he dismissed the tort claim, albeit without prejudice. Judgment was entered on January 14, 2008, from which Martel timely appealed.

Before this Court, Martel advances five arguments. First, it contends that in ruling on the town's summary-judgment motion, the hearing justice made impermissible findings of fact. Second, Martel argues that the hearing justice misconstrued this Court's decision in *Pezza*. Third, Martel avers that it had a vested right to the building permit. Next, Martel contends that the hearing justice erred in denying Martel's motion to strike the town's summary-judgment motion as violating Rule 56(f). Finally, it argues that it was error to dismiss the intentional-interference claim without prejudice.

## II

### Standard of Review

■ "This Court reviews a trial justice's decision to grant summary judgment on a *de novo* basis." *Credit Union Central Falls v. Groff*, 966 A.2d 1262, 1267 (R.I.2009) (citing *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I. 2003)). "We will affirm such a decision only if 'after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 638 (R.I.2005)). "Moreover, the party opposing a summary-judgment motion 'has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Id.* (quoting *Lucier*, 864 A.2d at 638).

## III

### Discussion

■ Our careful review of the hearing justice's decision reveals no cause for reversal. Martel's primary argument on appeal is that the hearing justice erred in declining to find that the town was estopped from enforcing its zoning ordinances. It long has been the law of this jurisdiction that,

"building permits *lawfully issued* for a permitted use should be immune to impairment or revocation by reason of subsequent amendment to the zoning ordinance when the holders thereof, acting in reliance thereon in good faith, initiate construction in some reasonably substantial measure or incur some reasonably substantial obligation promoting such construction." *Shalvey v. Zoning Board of Review of Warwick*, 99 R.I. 692, 699, 210 A.2d 589, 593–94 (1965) (emphasis added); *see also A. Ferland & Sons, Inc. v. Zoning Board of Review of East Providence*, 105 R.I. 275, 278–79, 251 A.2d 536, 538 (1969) (recognizing that the "acquisition of equities" immunize a narrow class of permit holders).

The crucial question before us, then, is whether the series of construction permits the town granted Martel were lawfully issued.

The facts in this case closely resemble the circumstances giving rise to our deci-

sion in *Pezza.* In that case, a company bought a parcel of property with the intention of operating an asphalt-mixing plant. *Pezza,* 723 A.2d at 280. To that end, it pursued a building permit from the town building official who, after first requiring preliminary approval from the Department of Environmental Management and the local fire department, issued the permit. *Id.* Relying on this permit, the company began construction of the plant. *Id.* at 280–81. Litigation commenced after a subsequent building official rescinded the company's building permit, citing, *inter alia,* the company's failure to provide a site plan in accordance with the town's zoning ordinance. *Id.* After finding that the building official had ignored the site plan requirement sixty-one out of a possible sixty-two times, the Superior Court refused to enjoin the company from going forward with construction, despite the clear language of the ordinance, declaring that such a remedy would be "too drastic." *Id.* at 283. We reversed the trial justice's decision, reasoning that "[a] building-permit applicant's compliance with [the] zoning ordinance * * * does not constitute a mere empty formality." *Id.* We went on to say,

> "In fact, such [compliance] is a condition precedent to the later submittal and potential building-permit approval by the town's building official. Because neither [the applicant] nor [the building official] even attempted to satisfy—much less fulfill—this condition precedent to the issuance of a building permit, [the building official's] act of issuing the building permit without first obtaining an approved site plan from the board was ultra vires, and the [applicants] were not entitled to rely upon the inspector's unlawful issuance of the permit in proceeding to construct the asphalt plant." *Id.*

■ Turning to the facts in this case, there is no dispute that the town's zoning ordinance expressly required development-plan-review approval before the building official lawfully could issue a building permit. It is also clear that, at the time the town building official issued the building permit in this case, Martel had not complied with that express mandate. Martel nevertheless urges this Court to apply the doctrine of equitable estoppel, despite our holding in *Pezza,* arguing that "it is patently unfair to require a developer to adhere to zoning regulations during the building permit stage that the municipality itself does not enforce." We disagree.

■ We long have refused to estop a governmental entity when to do so would contravene state law. *See, e.g., Romano v. Retirement Board of the Employees' Retirement System of Rhode Island,* 767 A.2d 35, 39–43, 43 (R.I.2001) (allowing a state employee to rely on *ultra vires* assurances of a state retirement counselor "would undermine the integrity and structure of our state government because it would allow every government official to act as his own mini-legislature, cashiering those laws he or she dislikes, is ignorant of, or misinterprets, and instead molding the law to be whatever the government official claims it to be"). As we explained in *Pezza,* a building-permit applicant is responsible for ensuring that his or her application conforms to the relevant zoning ordinances. Martel's failure to comply with the zoning ordinance is neither mitigated nor excused by the mere fact that the town building official also erred. Indeed, the town's error seems far less egregious than the situation in *Pezza,* where the building official almost uniformly ignored the requirements of the zoning ordinance. *Pezza,* 723 A.2d at 283. We often have stated that "[i]n Rhode Island the local building official is a municipal administrative officer who is bound to follow the zoning ordinance and applicable statutory

provisions pursuant to which he or she is authorized to act." *City of Providence v. Estate of Tarro,* 973 A.2d 597, 605 (R.I. 2009) (quoting *Pitocco v. Harrington,* 707 A.2d 692, 696 (R.I.1998)); *see also* G.L. 1956 § 23–27.3–107.1. A building official may not act beyond the authority granted to him or her by law. Thus, issuance of a building permit by the building official in the absence of development-plan review was *ultra vires* and unlawful such that the doctrine of equitable estoppel does not apply.

Martel argues alternatively that it had a vested right in the building permit. According to § 18.56.010 of the town zoning ordinance entitled "Creation of vested rights,"

> "Applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the town prior to enactment of this zoning ordinance or any amendment thereto shall be considered vested. For the purposes of this section, any application considered by the town shall be reviewed according to the regulations applicable in the zoning ordinance in force at the time the application was submitted."

Martel did not submit its request for development-plan review until January 20, 2006, after the town had amended its zoning ordinance to prohibit "adult entertainment businesses" outside the industrial zone. As such, Martel's application was not substantially complete before the prohibition was enacted; therefore, there is no "safe harbor" of substantial completeness that can be invoked.

We pause briefly to address the remainder of Martel's arguments. Martel also contends that the second hearing justice erroneously found that it failed to disclose its intention to open an adult-entertainment business when it applied for its building permits. We decline to address this issue. Whatever Martel's level of forthrightness, the hearing justice did not arrive at his decision by impugning Martel. Indeed, the hearing justice "expresse[d] no opinion on whether [Martel's] reliance was done in good faith or was sufficiently substantial so as to trigger [equitable estoppel]." Rather, the hearing justice found that, without development-plan review, the town could not issue Martel a valid building permit. Accordingly, we are satisfied that the second hearing justice's purported finding on Martel's failure to disclose its intended use for the property had no bearing on his ultimate decision.

■ Martel avers that the second hearing justice committed reversible error when he failed to rule on its motion to strike the town's counter-motion for summary judgment. Martel argues that by moving pursuant to Rule 56(f), the town was required to conduct additional discovery before filing its counter-motion for summary judgment. Rule 56(f) allows a party opposing a motion for summary judgment to seek additional time to conduct further discovery to respond to a motion for summary judgment. "This Court has held that a trial justice's decision to grant a continuance pursuant to Rule 56(f) is discretionary." *Chevy Chase, F.S.B. v. Faria,* 733 A.2d 725, 727 (R.I. 1999) (mem.) (citing *Greenwald v. Selya & Iannuccillo, Inc.,* 491 A.2d 988, 989 (R.I. 1985)). Further, "courts have been lenient with the party opposing summary judgment, even where [the party] has not formally complied with [R]ule 56(f)." *Mill Factors Corp. v. L.S. Building Supplies, Inc.,* 103 R.I. 675, 678, 240 A.2d 720, 722 (1968) (citing 6 Moore, *Federal Practice,* § 56.24 at 2872 (2d ed. 1966)). In light of the second hearing justice's broad discretion in granting a continuance pursuant to Rule 56(f) and Martel's failure to provide a

record of the hearing in which its motion to strike was denied, we are satisfied that the second hearing justice did not abuse his discretion.

■ Finally, Martel argues that the second hearing justice erred when he dismissed Martel's tort claim alleging intentional interference with contractual relations, based on its failure to comply with the notice provision in § 45–15–5, which requires a plaintiff to provide a municipality with forty days notice before commencing suit. Such notice is a condition precedent to a valid suit and is intended to afford a municipality time to settle a claim rather than undergoing the expense of litigation. *United Lending Corp.*, 827 A.2d at 632 (citing *Bernard v. Alexander*, 605 A.2d 484, 485 (R.I.1992)). There is no dispute that Martel failed to comply with § 45–15–5. However, because Martel refiled its intentional-interference with contractual-relations claim in compliance with § 45–15–5, it has waived this issue on appeal.

## IV

### Conclusion

For the reasons set out above, the judgment of the Superior Court is affirmed and the papers of the case are returned to the Superior Court.

Chief Justice WILLIAMS (ret.) did not participate.