DECISION
Before this Court is a renewed Super. R. Civ. P. 12(b)(6) motion to dismiss the counterclaim of Plaintiff Domestic Bank (Domestic) by Intervenor MEMO Money Order Co., Inc. (MEMO) and Domestic's Super. R. Civ. P. 56 cross-motion for summary judgment. In its counterclaim, Domestic alleges that MEMO (1) wrongfully stopped payment on three hundred thirty-seven (337) money orders in violation of G.L. 1956 § 6A-3-411 (Count One); and (2) has breached its obligation as the drawer of the money orders under G.L. 1956 § 6A-3-414 (Count Two).
 I Facts and Travel
Domestic is a federally chartered bank with a principal place of business in Cranston, Rhode Island. MEMO is a Pennsylvania corporation licensed to do business in the State of *Page 2 
Rhode Island as a money order provider. Defendant Johanny Urbaez (Urbaez) owns and operates U P Corp., Johnny Cash Check Cashing, Inc., EZ Cash I, LLC, EZ Cash II, LLC, Speedy Money Systems, LLC, and EZ Laundry, LLC (collectively, Money Order Defendants). The Money Order Defendants provide check cashing services, wire transfer services, and sell money orders.[1] They have used Domestic for loan and checking services since 2000.
Between May 11, 2009 and May 18, 2009, the Money Order Defendants deposited, by remote capture electronic device, 4,100 items into their Domestic account. The deposits allegedly totaled $2.1 million. On May 18, 2009, Domestic returned a series of checks that had been deposited by Urbaez and/or the Money Order Defendants into their Domestic account, and refused payment because they were drawn on a closed Citizens Bank account. Additionally, Domestic conducted an investigation which concluded that check fraud had occurred, and that recent deposits by the Money Order Defendants were fraudulent and/or suspicious.
On May 27, 2009, Domestic filed a three-count complaint against the Money Order Defendants, setting forth claims for fraud, conversion, and rescission. On August 11, 2009, MEMO filed a claim of intervenor against Domestic, setting forth claims for (1) conversion; (2) aiding and abetting the fraudulent transfer and conversion of funds; (3) unjust enrichment; and (4) breach of the duty of care.
Domestic's counterclaim against MEMO arises out of three hundred thirty-seven (337) money orders (Money Orders) that were issued by the Money Order Defendants, allegedly as agents for MEMO, to the benefit of individual payees. Between May 15, 2009 and May 18, 2009, these Money Orders, in addition to others, were deposited by the Money Order Defendants *Page 3 
into their Domestic account which Domestic thereafter credited with the respective Money Order amounts.
After crediting the Money Order Defendants' account, Domestic presented all of the money orders to BancFirst Stratford (BancFirst), MEMO's bank, for payment. Although BancFirst initially honored some of the money orders, MEMO ordered BancFirst to stop payment, believing them to have been fraudulently issued by the Money Order Defendants. On May 26, 2009 and May 27, 2009, the Money Orders relevant to this action were returned to Domestic stating "RETURN REASON STOP PAYMENT." Subsequently, on June 22, 2009, Domestic demanded that MEMO remit payment for $235,737.49, representing the value of the Money Orders on which MEMO had ordered payment stopped.
 II Standard of Review
It is well-settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of the complaint. See Toste Farm Corp. v. Hadbury, Inc.,798 A.2d 901, 905 (R.I. 2002) (quoting R.I. Emp't Sec. Alliance,Local 401, S.E.I.U., AFL-CIO v. State Dep't ofEmp't Training, 788 A.2d 465, 467 (R.I. 2002)). The complaint must give fair and adequate notice of the plaintiff's claim, but in most cases it need not contain a high degree of factual specificity.See, e.g., Hyatt v. Village House Convalescent Home,Inc., 880 A.2d 821, 824 (R.I. 2005) (per curiam). "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor."Pellegrino v. Rhode Island Ethics Comm'n,788 A.2d 1119, 1123 (R.I. 2002) (quoting Rhode Island Affiliate,ACLU v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). The court should grant such a motion "only when it is clear beyond a reasonable *Page 4 
doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim."Siena, MD v. Microsoft Corp., 796 A.2d 461, 463 (R.I. 2002).
Generally, because "the sole function of a motion to dismiss is to test the sufficiency of the complaint [or counterclaim]," a court's review is confined to the four corners of that pleading.Palazzo v. Alves, 944 A.2d 144, 149 (R.I. 2008) (quotingBernasconi, 557 A.2d at 1232); see also Barrette v.Yakavonis, 966 A.2d 1231, 1234 (R.I. 2009). Indeed, "[i]f a trial justice in ruling on a motion to dismiss, considers matters outside the scope of the complaint [or counterclaim], the motion is converted into a motion for summary judgment."Foley v. St. Joseph Health Servs. of R.I.,899 A.2d 1271, 1278 (R.I. 2006) (quoting Ouimette v. Moran,541 A.2d 855, 856 (R.I. 1988)). However, this rule is not absolute.See, e.g., Bowen Court Assocs. v. Ernst Young,LLP, 818 A.2d 721, 725-26 (R.I. 2003) (noting that under Super. R. Civ. P. 10(c), a motion justice may properly consider and refer to documents attached as exhibits to a pleading when deciding a Rule 12(b)(6) motion); see also Robert B. Kent et al.,Rhode Island Civil and AppellateProcedure § 10:3 (West 2006) (stating that "a copy of a written instrument, attached to a pleading as an exhibit, is a part of the pleading for all purposes," and "[a] counterclaim may incorporate by reference an exhibit attached to the plaintiff's complaint").
Moreover, "the First Circuit Court of Appeals has adopted a `practical, commonsense approach' for determining what materials may be properly considered on a motion to dismiss." Roy v.General Elec. Co., 544 F. Supp. 2d 103, 107 (D.R.I. 2008) (quoting Beddall v. State St. Bank Trust Co.,137 F.3d 12, 16 (1st Cir. 1998). "Under this approach, a court may consider not only the complaint [or counterclaim], but also the `facts extractable from documentation annexed to or incorporated by reference in the complaint [or counterclaim] and matters susceptible to judicial notice.'" Roy, 44 F. Supp. 2d at 107 (quotingJorge v. Rumsfeld, *Page 5 404 F.3d 556, 559 (1st Cir. 2005)). Additionally, when a "`complaint's [or counterclaim's] factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings.'" Roy, 44 F. Supp. 2d at 107 (quotingBeddall, 137 F.3d at 17); see also Jorge,404 F.3d at 559 (stating that "the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint [or counterclaim], even if that document is not annexed to the complaint [or counterclaim]").
 III Discussion A Article 3 of the Uniform Commercial Code
In its counterclaim, Domestic sets forth claims under §§ 3-411 and 3-414(b) of the Uniform Commercial Code (UCC). Article 3 of the UCC applies to and governs negotiable instruments.See § 3-102.[2] A "negotiable instrument" is
 "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the *Page 6 
promise or order if it: (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand at a definite time; and (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. . . ." Section 3-104(a).
Here, it is without question that the Money Orders at issue are negotiable instruments. Indeed, the Money Orders state "pay to the order of," are payable on demand at a definite time, and there is no indication that an additional act is required for payment of the money.
 1 Liability for the Money Orders
As a threshold matter, MEMO contends that it cannot be held liable on the Money Orders because it has not signed them. Indeed, the UCC circumscribes a party's liability on a negotiable instrument.See § 3-401. Under § 3-401 a person is only liable on an instrument if: "(1) the person signed the instrument; or (2) the person is represented by an agent or representative who signed the instrument and the signature is binding on the representative person under section 3-402." Id. Further, this section provides that a "signature may be made: (1) manually or by means of a device or machine; and (2) by the use of any name, including a trade or assumed name, or by a word, mark or symbol executed or adopted by a person with a present intention to authenticate awriting."[3] Id. (emphasis added).
Although Domestic has failed to allege in its counterclaim that MEMO or its agents either signed the Money Orders or did so with the present intention to authenticate them, it does allege that the "Money Order Defendants were authorized to issue money orders to customers on behalf of MEMO." (Counterclaim ¶ 14.) Consequently, if in fact the Money Order Defendants *Page 7 
were a contractually authorized representative or signatory, under the UCC, MEMO would be bound and liable on any instrument properly signed by them, whether or not they were identified in it.See § 3-402 (stating that "[i]f a person acting, or purporting to act, as a representative signs an instrument by signing . . . the[ir] name . . . the represented person is bound by the signature . . . and the represented person is liable on the instrument, whether or not identified in [it]").
Indeed, while the Court concedes that the imprint of MEMO's logo in the upper left-hand corner of the Money Orders, in and of itself, may not be sufficient to constitute a signature under § 3-401, courts have held that § 3-401's signature requirement was satisfied where the bank's name, branch, and amount were also imprinted on the money order by a checkwriter at the time of sale.See CCNB v. Piersol,18 Pa. D. C. 4th 428, 435 (Pa. Com. Pl. 1992); see alsoInterfirst Bank Carrollton v. Northpark Nat'l Bank,671 S.W.2d 100, 104 (Tex. App.Ct. 1984) (finding the lack of signature was not controlling where the bank elected to sell the money order in the form it did, and it selected — in lieu of a signature — a checkwriting imprint indicating the bank name and money order amount). Here, upon review of the Money Orders, it appears that a checkwriter imprinted a serial number, agent number, and store number in addition to the money order amount. Therefore, if in fact the Money Order Defendants were contractually authorized to issue the Money Orders as MEMO's agents, and the checkwriter imprint was stamped by the Money Order Defendants at the time of sale, the Court could find that MEMO — through the actions of its agents — was a signatory to the Money Orders and liable thereto.
 2 The Refusal to Pay
In Count One of its counterclaim, Domestic alleges that MEMO is liable for expenses, loss of interest, attorney's fees, and consequential damages under § 3-411 because it wrongfully *Page 8 
directed BancFirst to stop payment on the Money Orders after Domestic had already deposited and presented them to BancFirst.See Counterclaim ¶ 32. In relevant part, § 3-411 provides:
 "6A-3-411. Refusal to pay cashier's checks, teller's checks and certified checks. - (a) In this section, "obligated bank" means the acceptor of a certified check or the issuer of a cashier's check or teller's check bought from the issuer.
 "(b) If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages. . . ." Section 3-411.
Therefore, in order to have stated a claim upon which relief could be granted, Domestic's counterclaim must allege that (1) the Money Orders are teller's checks, certified checks, or cashier's checks; and (2) MEMO is an "obligated bank."[4] However, this does not end the Court's inquiry.
Under the UCC, a "teller's check" is defined as "a draftdrawn by a bank (i) on another bank; or (ii) payable at or through a bank." Section 3-104(h) (emphasis added). Likewise, a "cashier's check" is defined as "a draft with respect to which the drawer and drawee are the same bank or branches of thesame bank." Section 3-104(g) (emphasis added). It follows, therefore, that in order for the Money Orders to qualify as either a teller's check or a cashier's check, MEMO, at a minimum, must be a bank.
Here, however, Domestic's counterclaim fails to allege that MEMO is a bank. Rather, the counterclaim explicitly states that "MEMO is a Pennsylvania business corporation licensed to do business in the State of Rhode Island as a money order provider."See Counterclaim ¶ 2 *Page 9 
(emphasis added); see also Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v.Howard, 784 A.2d 291, 297-98 (R.I. 2001)) (noting that when determining whether to grant a Rule 12(b)(6) motion to dismiss, a court "assumes the allegations contained in the complaint to be true"). According to the UCC, a "`bank' [is] a person engaged in the business of banking, including a savings bank, savings and loan association, credit union or trust company."[5] Section 4-105(1). The UCC makes clear "that [a] `bank' includes savings banks, savings and loan associations, credit unions and trust companies, in addition to the commercial banks commonly denoted by use of the term `bank.'"[6] Section 4-105 cmt. 2. Domestic's counterclaim, however, fails to even allege that MEMO is in the business of banking.
Moreover, MEMO need not be a bank in order to engage in the sale of money orders. See 1 Henry J. Bailey Richard B. Hagedorn, Brady on BankChecks ¶ 1.20, at 1-37 (rev. ed. 2010) (stating that money orders may also be "issued by nonbank organizations, which are sold through independent outlets such as retail stores"); seealso § 3-104 cmt. 4 (stating that money orders "are sold both by banks and non-banks . . . and their form determines how they are treated in article 3"). Here, the Money Orders state that they are "PAYABLE THROUGH BANCFIRST STRATFORD, OK." It is common that money orders, such as those at issue, are drawn on a "nonbank drawee" and payable through a named bank. See Brady on BankChecks ¶ 1.12, at 1-18. In these circumstances, the named payable-through bank, such as BancFirst, is considered a collecting and presenting bank, and not a drawee or payor bank."[7][8]Id. Indeed, these money *Page 10 
orders are not an order on the payable-through bank to pay the instrument, but rather to present the draft to the drawee for payment." Id.
For these reasons, the Court finds that even if it were to accept all of the allegations in the counterclaim as true, MEMO is not a bank, and as a result, the Money Orders are neither a teller's check nor a cashier's check. Accordingly, the Court finds, beyond a reasonable doubt, that Domestic would not be entitled to relief pursuant to § 3-411 under any set of facts that could be proven in support of its claim, and therefore, it grants MEMO's motion to dismiss as to Count One of the counterclaim.
 3 Obligation of Drawer
In Count Two of Domestic's counterclaim it alleges that MEMO violated § 3-414 by directing BancFirst to stop payment on the Money Orders and refusing to remit payment for the full value of the Money Orders. Section 3-414 provides in relevant part:
 "6A-3-414. Obligation of drawer. -
 ". . .
 "(b) If an unaccepted draft is dishonored, the drawer is obliged to pay the draft (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (ii) if the drawer signed an incomplete instrument, according to its terms when completed, to the extent stated in §§ 6A-3-115 and 6A-3-407. The obligation is owed to a person entitled to enforce the *Page 11 
draft or to an indorser who paid the draft under § 3-415." Section 3-414(b).
Therefore, MEMO's liability under § 3-414(b) turns on its status as a drawer. Under the UCC, a "drawer" is defined as "a person who signs or is identified in a draft as a person ordering payment." Section 3-103(a). Here, Domestic's counterclaim alleges that "[e]ach of the [M]oney [O]rders identify `MEMO' as the drawer." (Counterclaim ¶ 17.) Assuming, as it must, that allegation to be true, and resolving any doubts in Domestic's favor, the Court finds that Domestic may be entitled to relief. As set forth above, because the Court could find that MEMO — through the actions of its agents — was a signatory to the Money Orders, it follows that MEMO may also be the drawer of the Money Orders.
Furthermore, although the Money Orders do not contain a designated space for MEMO's officers or agents to sign as a drawer, the Money Orders clearly provide a space for "PURCHASER'S SIGNATURE FOR ISSUER." Under the UCC § 3-105(c), an "issuer" is defined as "a maker or drawer of an instrument." Section 3-105(c). As a result, if indeed the Court were to accept MEMO's contention that a purchaser — and not MEMO or its agents — is the drawer of these Money Orders, it appears that this language and the need for such a signature would be nonsensical in light of the foregoing.
For these reasons, and in light of the facts alleged in the counterclaim, the Court finds that MEMO has not met its burden of establishing beyond a reasonable doubt that Domestic would not be entitled to relief under § 3-414(b). The Court, therefore, denies MEMO's motion to dismiss as to Count Two of the counterclaim. *Page 12 
 B Domestic's Motion for Summary Judgment
In its reply, MEMO requested that Domestic's motion for summary judgment not be heard to allow it time to complete its discovery pursuant to Super. R. Civ. P. 56(f). In particular, Memo avers that it has not yet completed the deposition of Domestic's first witness. Rule 56(f) provides:
 "Should it appear from the affidavits of a party opposing [summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Super. R. Civ. P. 56(f) (emphasis added).
This rule "allows a party opposing a motion for summary judgment to seek additional time to conduct further discovery to respond to a motion for summary judgment." Martel Inv. Group, LLC v.Town of Richmond, 982 A.2d 595, 601 (R.I. 2009). Although MEMO has failed to file an affidavit stating the reasons it cannot present facts essential to justify its opposition, our Supreme Court "`has held that a trial justice's decision to grant a continuance pursuant to Rule 56(f) is discretionary.'" Id. (quotingChevy Chase, F.S.B. v. Faria, 733 A.2d 725, 727 (R.I. 1999);see also Greenwald v. Selya Iannuccillo, Inc.,491 A.2d 988, 989 (R.I. 1985)). Further, "`courts have been lenient with the party opposing summary judgment, even where [the party] has not formally complied with [R]ule 56(f).'" Martel,982 A.2d at 601 (quoting Mill FactorsCorp. v. L.S. Bldg. Supplies, Inc.,103 R.I. 675, 678, 240 A.2d 720, 722 (1968); see alsoChevy Chase, 733 A.2d at 727 (stating that a court may grant a continuance under Rule 56(f) if the court believes additional time might result in the party producing "facts essential to justify [their] position"). *Page 13 
Therefore, where, as here, MEMO has indicated that it is still in the process of taking depositions, the Court finds that it should have the opportunity to pursue further discovery to address the relevant issues. Moreover, in light of the questions identified herein, the Court finds Domestic's motion to be premature, and should be denied without prejudice.
 IV Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel at the hearing and in their memoranda, the Court finds, beyond a reasonable doubt, that Domestic is not entitled to relief under § 3-411 under any set of facts alleged in support of its claim, and therefore, it grants MEMO's motion to dismiss as to Count One of the counterclaim. However, for the reasons set forth above, and in light of the facts alleged in the counterclaim, the Court finds that Domestic may be entitled to relief under § 3-414(b). Consequently, the Court denies MEMO's motion to dismiss as to Count Two of the counterclaim. Moreover, because MEMO is still in the process of taking depositions, and relevant questions remain as to MEMO's liability under Count Two, the Court finds Domestic's motion to be premature, and is therefore, denied without prejudice.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] "A money order is a form of credit instrument calling for the payment of money to the named payee and providing a safe and convenient means of remitting funds by persons not having checking accounts." 1 Henry J. Bailey Richard B. Hagedorn, Brady on BankChecks ¶ 1.20, at 1-35 (rev. ed. 2010).
[2] MEMO asserts that to the extent Domestic's claims are premised on the allegation that MEMO is a bank, because MEMO is domiciled in Pennsylvania, the law of that state applies. Similarly, MEMO contends that to the extent the claims are premised on the allegation that the Money Orders were presented to Bancfirst, which is located in Oklahoma, that state's law applies. In making these assertions, MEMO relies on UCC § 4-102 which provides that "the liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located."See G.L. 1956 § 4-102. However, for the reasons set forth below, this Court finds that MEMO is not a bank, and therefore, this case is not governed by the terms of § 4-102. Consequently, where, as here, the relevant provisions of the UCC adopted by Rhode Island, Pennsylvania, and Oklahoma are substantially identical, and the transaction bears a "reasonable" and "appropriate" relation to this State, the Court finds it appropriate to proceed under Rhode Island law. See G.L. 1956 § 1-105. Indeed, not only is MEMO a money services provider licensed to do business in Rhode Island, but the Money Orders were also deposited at Domestic, a federally chartered bank with a principal place of business in Rhode Island.
[3] The Comments to the UCC explain that "[a] signature may be handwritten, typed, printed or made in any other manner . . . [and] may be made by mark, or even by thumb-print." Section 3-401 cmt. 2.
[4] Domestic's counterclaim alleges that the Money Orders constitute either a cashier's check or a teller's check, and the Court will limit its analysis accordingly. See
Counterclaim ¶¶ 29-30.
[5] Section 4-105 is made applicable to Article 3 through § 3-103(c). See § 3-103(c).
[6] Notably, MEMO is not a bank under either Rhode Island or Pennsylvania law. Indeed, both Rhode Island and Pennsylvania require a bank to be chartered or certified. See
G.L. 1956 § 19-2-3; 7 Pa. Stat. Ann. Ch. 1 § 102(f).
[7] Under the UCC, a "payor bank" is defined as "[a] bank that is the drawee of a draft." Section 4-105. Further, a "drawee" is defined as "[a] person ordered in a draft to make payment." Section 3-103(a).
[8] Although these types of money orders may have check-like characteristics, and are frequently regarded as checks, they are drafts, and not checks, because they are drawn on a nonbank drawer rather than a bank. Brady on BankChecks ¶ 1.12, at 1-18; see also § 3-104(f) (defining a check as "payable on demand and drawn on a bank," and therefore, excluding money orders drawn on a nonbank entity) (emphasis added). In those instances where the form of an instrument is ambiguous and it is not clear whether it is a payable-through draft or a check, if the draft names a nonbank drawee and if it is unclear whether a bank also named in the draft is a codrawee or a collecting bank, the bank is a collecting bank.See § 4-106(c). *Page 1